# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | District Court Case No. 08 C 4235 |
| Resource Technology Corporation, | ) | Consolidated with 08 C 4228 |
| | ) | |
| Debtor. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| _____ | ) | |
| | ) | |
| Ungaretti & Harris, LLP, | ) | |
| | ) | Appeal from the United States |
| Appellant, | ) | Bankruptcy Court for the |
| | ) | Northern District of Illinois, |
| v. | ) | |
| | ) | Bankruptcy Case No. 99-35434 |
| Jay A. Steinberg, not Individually but Solely as | ) | |
| Chapter 7 Trustee of the Estate of Resource | ) | |
| Technology Corporation, | ) | Honorable Eugene R. Wedoff, |
| | ) | Bankruptcy Judge |
| Appellee. | ) | |

---

## BRIEF OF APPELLEE JAY A. STEINBERG, NOT INDIVIDUALLY BUT SOLELY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF RESOURCE TECHNOLOGY CORPORATION

---

Barry A. Chatz
George P. Apostolides
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Phone: (312) 876-7100
Fax: (312) 876-0288

James G. Richmond
Gregory E. Ostfeld
Greenberg Traurig LLP
77 W. Wacker Dr., Suite 2500
Chicago, IL 60601
Phone: (312) 456-8400
Fax: (312) 456-8435

*Attorneys for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... iii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................................... 1

STANDARD OF APPELLATE REVIEW................................................................................. 1

STATEMENT OF THE CASE................................................................................................... 2

STATEMENT OF FACTS ........................................................................................................ 3

    I. The Fee Procedures Order ......................................................................................... 3

    II. The Unauthorized Payments to U&H ....................................................................... 4

    III. U&H's Subsequent Fee Applications ...................................................................... 5

    IV. The U&H Adversary Proceeding............................................................................. 6

SUMMARY OF ARGUMENT ................................................................................................ 8

ARGUMENT .......................................................................................................................... 9

    I. The Payments to U&H Were Unauthorized and Must Be Disgorged to the Estate ............... 9

        A. U&H Failed to Comply with the Fee Procedures Order................................... 10

        B. U&H's Violation of the Fee Procedures Order and Section 331
           of the Bankruptcy Code Merits Disgorgement. ............................................... 11

    II. The Bankruptcy Court Properly Exercised Its Discretion to Order Disgorgement
       in Order to Ensure a *Pro Rata* Distribution of the Estate's Assets to Administrative
       Claimants ............................................................................................................. 14

        A. The Bankruptcy Court Has the Legal Authority to Order Disgorgement Under
           Sections 105 and 726(b) of the Bankruptcy Code. ......................................... 15

        B. U&H Has Failed to Present a Valid Basis to Deprive the Bankruptcy Court of
           its Authority to Order Disgorgement. ............................................................. 16

        C. The *St. Joseph's Cleaners* Decision Does not Circumscribe the Bankruptcy
           Court's Authority to Order Disgorgement...................................................... 21

III. The Circumstances of this Case Warranted the Bankruptcy Court's Exercise of Its Discretion to Order a Disgorgement by U&H ............................................................. 23

CONCLUSION ........................................................................................................................ 27

APPELLEE'S STATUTORY ADDENDUM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8010(b) ..................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890 (1st Cir. 1985) ......... 19

*Brouwer v. Ancel & Dunlap (In re Firstmark Corp.)*, 46 F.3d 653 (7th Cir. 1995) ...................... 16

*CIT Communications Finance Corp. v. Midway Airlines Corp.*,
406 F.3d 229 (4th Cir. 2005) ..................................................................................... 7, 14

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146 (1992) ............................... 12

*Guinee v. Toombs (In re Kearing)*, 170 B.R. 1 (Bankr. D.D.C. 1994) ............................ 16, 17, 24

*Hill v. Fidelity Fin. Services (In re Hill)*, 152 B.R. 204 (Bankr. S.D. Ohio 1993) ...................... 12

*In re ABC-Naco, Inc.*, 483 F.3d 470 (7th Cir. 2007) ...................................................................... 1

*In re Amherst Mister Anthony, Ltd.*, 63 B.R. 292 (Bankr. W.D.N.Y. 1986) ............................... 13

*In re Anolik*, 207 B.R. 34 (Bankr. D. Mass. 1997) ...................................................................... 20

*In re Barber*, 223 B.R. 830 (Bankr. N.D. Ga. 1998) ................................................................... 12

*In re Bond*, 254 F.3d 669 (7th Cir. 2001) ...................................................................................... 1

*In re Burlington Tennis Ass'n*, 34 B.R. 839 (Bankr. D. Vt. 1983) ............................................... 19

*In re CHC Industries, Inc.*, 2006 WL 4968122 (Sept. 5, 2006) ................................................... 20

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 78 F.3d 285 (7th Cir. 1996) ...................... 1

*In re Davis*, 2007 WL 1219718 (Bankr. N.D. Ala. Apr. 25, 2007) .............................................. 24

*In re Diamond Mortgage Corp. of Illinois*, 135 B.R. 78 (Bankr. N.D. Ill. 1990) ....................... 25

*In re Evangeline Refining Co.*, 890 F.2d 1312 (5th Cir. 1989) .................................................... 16

*In re Genlime Group, L.P.*, 167 B.R. 453 (Bankr. N.D. Ohio 1994) ........................................... 12

*In re Geraci*, 138 F.3d 314 (7th Cir. 1998) .................................................................................... 1

*In re Hyman Freightways, Inc.*, 2006 WL 3757972 (D. Minn. Dec. 20, 2006) .................... 17, 18

*In re Kaiser Steel Corp.*, 74 B.R. 885 (Bankr. D. Colo. 1987) .................................................... 19

*In re Kearing*, 170 B.R. 1 (Bankr. D. Colo. 1994) ................................................................. 16, 21

*In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr. N.D. Ill. 1998) ................................ 21, 24

*In re Kingston Turf Farms, Inc.*, 176 B.R. 308 (Bankr. D.R.I. 1995) ...................................... 16, 24

*In re Kisseberth*, 273 F.3d 714 (6th Cir. 2001).......................................................................... 26, 27

*In re Lochmiller Indus., Inc.*, 178 B.R. 241 (Bankr. S.D. Cal. 1995)...................................... 16, 24

*In re LTV Steel Company, Inc.*, 288 B.R. 775 (Bankr. N.D. Ohio 2002) ...................................... 20

*In re Metropolitan Environmental, Inc.*, 293 B.R. 871 (Banrk. N.D. Ohio 2003) ....................... 25

*In re Midway Industrial Contractors, Inc.*, 272 B.R. 651 (Bankr. N.D. Ill. 2001)...................... 25

*In re Outboard Marine Corp.*, 278 B.R. 778 (N.D. Ill. 2002) ........................................................ 2

*In re Powers*, 93 B.R. 513 (Bankr. S.D. Tex. 1988).................................................................. 7, 13

*In re Sauer*, 222 B.R. 604 (8th Cir. BAP 1998)............................................................................ 24

*In re St. Joseph's Cleaners, Inc.*, 346 B.R. 430 (Bankr. W.D. Mich. 2006) ................... 21, 22, 23

*In re Stable Mews Associates*, 778 F.2d 121 (2nd Cir. 1985) ...................................................... 16

*In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995) ................................................................ 16

*In re The Lighting Center*, 178 B.R. 320 (Bankr. D.R.I. 1995)..................................................... 15

*In re Triple S Restaurants, Inc.*, 130 Fed. Appx. 766 (6th Cir. 2005) ........................................... 24

*In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bankr. N.D. Ohio 1989) .......................... 18, 19

*In re Wilson Foods Corp.*, 36 B.R. 317 (Bankr. Okla. 1984) ......................................................... 12

*Klingman v. Levinson*, 877 F.2d 1357 (7th Cir. 1989) .................................................................... 2

*Matter of Lawler*, 807 F.2d 1207 (5th Cir. 1987) .......................................................................... 19

*Matz v. Hoseman*, 197 B.R. 635 (N.D. Ill. 1996) ..................................................... 15, 17, 21, 24

*Murphy v. Slack*, 2006 WL 2583726 (N.D. Ill. Sept. 5, 2006) ....................................................... 2

*Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990) .................................... 12

*Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec.
Supply Corp.),* 185 B.R. 505 (Bankr. E.D. Va. 1995) .................................................. 15, 17, 24

*Southwestern Media, Inc. v. Rau,* 708 F.2d 419 (9th Cir. 1983) .................................................. 19

*Specker Motor Sales Co. v. Eisen,* 393 F.3d 659 (6th Cir. 2004) .................................. 7, 15, 17, 22

*United States Trustee v. Johnston,* 189 B.R. 676 (N.D. Miss. 1995) ........................................... 15

## Statutes

11 U.S.C. § 105 ................................................................................. 1, 14, 15, 17, 21, 23, 26

11 U.S.C. § 328 ................................................................................................... 24, 25

11 U.S.C. § 329 ............................................................................................... 24, 25, 26

11 U.S.C. § 330 ............................................................................................... 21, 22, 23

11 U.S.C. § 331 ............................................... 1, 4, 7, 8, 9, 11, 12, 13, 20, 22, 26

11 U.S.C. § 549 ..................................................................................................... 7, 13

11 U.S.C. § 726 ...................................... 1, 7, 9, 14, 15, 16, 17, 21, 22, 23, 24, 25, 26, 27

## Rules

Fed. R. Bankr. P. 2014 ............................................................................................... 25

Fed. R. Bankr. P. 2016 ............................................................................................... 25

Fed. R. Bankr. P. 8010 ................................................................................................. 3

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the Bankruptcy Court correctly ordered Ungaretti & Harris, LLP ("U&H") to disgorge funds that U&H received from the Estate of Resource Technology Corporation (the "Estate"), where U&H received the funds at issue in violation of the Bankruptcy Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Trustee's Professionals (the "Fee Procedures Order"), and in violation of the notice and hearing requirements of Section 331 of the Bankruptcy Code, 11 U.S.C. § 331.

2.      Whether the Bankruptcy Court properly acted within its discretion in ordering U&H to disgorge funds that U&H received from the Estate, in order to ensure a *pro rata* distribution of the Estate's assets to Chapter 7 and Chapter 11 administrative claimants in accordance with Sections 105 and 726(b) of the Bankruptcy Code, 11 U.S.C. §§ 105, 726(b).

## STANDARD OF APPELLATE REVIEW

Attorney fee awards rest within the sound discretion of the Bankruptcy Court, and this Court may only disturb an order of the Bankruptcy Court requiring the return of a professional fee upon finding that the Bankruptcy Court abused its discretion. *In re Bond*, 254 F.3d 669, 676 (7th Cir. 2001); *In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998). To find an abuse of discretion, the Court must be "convinced that no reasonable person could agree with the [B]ankruptcy [C]ourt." *In re Geraci*, 138 F.3d at 319 (*citing In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 78 F.3d 285, 294 (7th Cir. 1996)). Otherwise, the Bankruptcy Court must be affirmed. *Id.* The Bankruptcy Court's rulings of law are reviewed *de novo*, and its findings of fact are reviewed for clear error. *In re ABC-Naco, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007). This Court may affirm the Bankruptcy Court on any ground that has a basis in the record, regardless of whether it was relied upon by the Bankruptcy Court. *See Klingman v. Levinson*, 877 F.2d 1357,

1360 n. 3 (7th Cir. 1989); *Murphy v. Slack*, 2006 WL 2583726, *2 (N.D. Ill. Sept. 5, 2006); *In re Outboard Marine Corp.*, 278 B.R. 778, 782 (N.D. Ill. 2002).

## STATEMENT OF THE CASE

This matter is before the Court on appeal from the Bankruptcy Court's Order Directing Disgorgement of Fees (the "Disgorgement Order"), entered on June 17, 2008. (Bankr. D.I. No. 4313).[1] The Bankruptcy Court entered the Disgorgement Order pursuant to a Motion for Order Directing Disgorgement of Fees (the "Disgorgement Motion"), filed by Jay A. Steinberg (the "Chapter 7 Trustee"), not individually but solely as Chapter 7 Trustee of the Estate of Resource Technology Corporation (the "Estate"), on June 6, 2007. (Bankr. D.I. No. 4005). U&H filed its Response in Opposition to Chapter 7 Trustee's Motion for Order Directing Disgorgement of Fees (the "Response") on July 3, 2007. (Bankr. D.I. No. 4023). The Estate filed its Reply in Support of Motion for Order Directing Disgorgement of Fees (the "Reply") on July 17, 2007. (Bankr. D.I. No. 4036). The Disgorgement Order directs U&H to disgorge $376,235.54 (the "Disgorgement Sum") that it obtained from the prior Chapter 11 Trustee of the Estate, before the bankruptcy proceeding below was converted from Chapter 11 to Chapter 7 proceedings. (Bankr. D.I. No. 4313). U&H timely filed its Notice of Appeal from the Disgorgement Order on June 26, 2008. (Bankr. D.I. No. 4319).

U&H's Statement of the Case characterizes the division of the Disgorgement Sum as comprising $161,054.23 in attorneys' fees, and $215,181.31 in out of pocket costs. (U&H Br. at 2-3).[2] U&H does not provide any record citation in its brief to support this characterization, and the Trustee has not been able to locate any support for U&H's position. Additionally, U&H's

---

[1] Citations in this Brief to the record below in Bankruptcy Case No. 99-35434 are presented using the format, "(Bankr. D.I. No. ___)."

[2] Citations in this Brief to the Brief of Ungaretti & Harris, LLP are presented using the format, "(U&H Br. at ___)."

Statement of the Case includes self-serving characterizations of U&H's "vigorous[]" efforts in representing the Chapter 11 Trustee to "preserve[]" and "enhance[]" the Chapter 11 Estate, and argument regarding the "questionable implementation" and "punitive nature" of the Disgorgement Order. (*Id.* at 3). Such unsupported factual assertions, characterizations, and argument are inappropriate to the statement of the case under Rule 8010(a)(2) of the Federal Rules of Bankruptcy Procedure, and should therefore be stricken or disregarded by the Court.

## STATEMENT OF FACTS

**I.    The Fee Procedures Order**

The bankruptcy proceeding below (the "RTC Bankruptcy") commenced as an involuntary bankruptcy proceeding in November 1999. (Bankr. D.I. No. 1). On August 26, 2003, the Bankruptcy Court appointed Gregg E. Szilagyi of U&H as the Chapter 11 Trustee. (Bankr. D.I. No. 1804). On application of the Chapter 11 Trustee, the Bankruptcy Court approved the retention of R. Scott Alsterda, Christopher L. Rexroad, and Alex Pirogovsky of U&H as counsel to the Chapter 11 Trustee. (Bankr. D.I. No. 1811).

The Bankruptcy Court entered the Fee Procedures Order on September 18, 2003. (Bankr. D.I. No. 1830). The Fee Procedures Order, which was prepared by U&H, provides in relevant part:

> 2.    Except as may otherwise be provided in court orders authorizing the retention of specific professionals, the Trustee's Professionals in these cases may seek interim compensation in accordance with the following procedures:
>
> Within twenty (20) days of the conclusion of each month, each Professional will present to counsel for the Trustee, counsel for the Debtor, the United States Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for National Electric Company and such other parties as the Court might order, a detailed statement of services rendered and expenses incurred ("Invoice") by the Professional for such month. Said parties will have ten (10) days from the service of the Invoice in which to serve a written objection on the Professional, delineating with specificity those fees or expenses as to which there is an objection. If there is no timely objection to the Invoice or if such objection is only as to a portion of the fees or expenses, the Debtor will pay eighty

percent (80%) of the unobjected-to amount of fees incurred for the month, with a twenty percent (20%) holdback, and one hundred percent (100%) of the unobjected-to expenses for the month. *These payments will be subject to the court's subsequent approval as part of the normal interim fee application process approximately every 120 days*. The failure of a party to object to an Invoice shall not prejudice said party's right to raise an objection to a fee application. *Neither the payment of, nor the failure to pay, in whole or in part, monthly interim compensation and reimbursement as provided herein shall bind any party in interest or this court with respect to the final allowance of applications for compensation and reimbursement of Professionals*.

   3.    *The monthly payments made pursuant to this Order shall be provisional in nature and consequently shall be subject to further order of the court as part of the interim fee application process pursuant to 11 U.S.C. § 331. All fees and expenses paid to Professionals pursuant to this Order shall be subject to disgorgement until final allowance by the Court.*

(Bankr. D.I. No. 1830 (emphasis added)).

## II.    The Unauthorized Payments to U&H

U&H's Statement of Facts asserts that, "[p]ursuant to the Fee Procedures Order, U&H circulated certain monthly invoices for the months of September 2003 through April 2005, to the designated creditors and parties in interest, with no party objecting to any bills or interim payments under the Fee Procedures Order." (U&H Br. at 4). Again, U&H does not provide any record citation in its brief to support this characterization, and the Trustee has not been able to locate any support for U&H's position. U&H does not identify what is meant by "certain monthly invoices," does not state whether it circulated the invoices within twenty (20) days of the conclusion of each month, and does not indicate whether it circulated each such invoice to all of the attorneys and parties identified in the Fee Procedures Order. Nor was any of this information provided by U&H in its Response filed with the Bankruptcy Court. (Bankr. D.I. No. 4023).

The Statement of Facts submitted by U&H also states, without supporting record citations, that "[f]rom time to time, one of RTC's secured lenders, authorized the Chapter 11 Trustee to use certain available cash collateral generated from operations of RTC's Pontiac

facility to make payments to U&H under the Fee Procedures Order." (U&H Br. at 4). U&H asserts that these payments were "made in increments of between $15,000.00 to $30,000.00 per month," and "represented a mere fraction of the fees and costs" to which U&H would have been entitled under the Fee Procedures Order. (*Id.*). In its Response below, U&H itemized the above-described payments and provided check numbers or a wire transfer description for each payment, but provided no documentation of the payments and no information to indicate what each payment was intended to compensate, how the round amounts of each payment (typically $15,000, $25,000, or $30,000) were determined, what notice (if any) of each payment was provided, or to whom (if anyone) such notice was provided. (Bankr. D.I. No. 4023, at 2). The payments listed in U&H's Response were made once or sometimes twice a month from November 2003 until May 2005, and totaled $376,235.54. (*Id.*).

### III.    U&H's Subsequent Fee Applications

U&H did not submit normal interim fee applications to the Bankruptcy Court for approval of its interim payments approximately every 120 days between November 2003 and May 2005. It submitted its First Interim Application for Professional Compensation for U&H & Harris LLP (the "Interim Application") on September 2, 2005. (Bankr. D.I. No. 2540). The Interim Application sought $1,876,019.00 in attorneys' fees, and $210,062.66 in expenses. (*Id.*). U&H subsequently submitted its Final Application for Professional Compensation for U&H & Harris LLP (the "Final Application") on January 25, 2006. (Bankr. D.I. No. 3002). The Final Application sought $1,953,402.50 in attorneys' fees, and $215,181.31 in expenses. (*Id.*). The Bankruptcy Court has deferred ruling on the Final Application in light of the conversion of the case to a Chapter 7 proceeding.

## IV.    The U&H Adversary Proceeding

The Bankruptcy Court entered an order on September 21, 2005, converting the RTC Bankruptcy from a Chapter 11 proceeding to a Chapter 7 proceeding and removing Szilagyi as Chapter 11 Trustee. (Bankr. D.I. No. 2567). On April 4, 2006, U&H commenced an adversary proceeding, Bankruptcy Case No. 06-00907 (the "U&H Adversary Proceeding"), against the Chapter 7 Trustee, seeking injunctive relief and other relief to prevent the Chapter 7 Trustee from disbursing funds in the amount of $1,500,000.00. (Adv. Bankr. D.I. No. 1).[3] On May 18, 2006, the Chapter 7 Trustee brought a motion to approve a proposed settlement with U&H, which would have authorized the Estate to pay costs to the Chapter 11 Trustee and U&H in the amount of $253,190.22, and would have waived the Estate's disgorgement claim against U&H. (Adv. Bankr. D.I. No. 26).

On December 4, 2006, the Bankruptcy Court entered its Memorandum of Decision denying approval of the proposed settlement. (Adv. Bankr. D.I. No. 51). The Bankruptcy Court found, in relevant part:

> [W]hatever claims U&H has against the RTC estate are only payable as Chapter 11 administrative claims, subordinated to the costs of administration of the case in Chapter 7 and payable pro rata with other Chapter 11 administrative claims. The assets in RTC's estate are not likely to allow payment of Chapter 11 administrative claims in full, and so the payments to U&H and the waiver of the estate's disgorgement claim proposed by the pending settlement are outside the range of reasonable litigation outcomes in this proceeding. Moreover, the proposed allowance of administrative claims for professional fees without judicial review is improper. Accordingly, the motion to approve the settlement will be denied.

(*Id.* at 2).

The Bankruptcy Court further found, with respect to the Estate's disgorgement claim:

---

[3] Citations in this Brief to the record in the U&H Adversary Proceeding, Bankruptcy Case No. 06-00907, are presented using the format, "(Adv. Bankr. D.I. No. ___)."

The estate would very likely succeed in its claim for disgorgement. The payments that U&H received from the estate during Szilagyi's Chapter 11 administration were, as noted above, made without court authorization. Thus, regardless of whether U&H would have been entitled to the payments upon proper application, the payments are subject to avoidance under § 549(a)(2)(B) of the Code (allowing the trustee to avoid any postpetition transfers of estate property not authorized by the court). *In re Powers*, 93 B.R. 513, 516 (Bankr. S.D. Tex. 1988).

More fundamentally, even if the payments had been authorized, they would be subject to disgorgement in view of the present inability of the RTC estate to pay all of its Chapter 11 administrative expenses. U&H is only one among several entities that provided goods or services to the RTC estate during its administration in Chapter 11; their resulting administrative claims amount to some $87 million. Each of these administrative creditors is entitled to a pro rata distribution of the estate under § 726(b) of the Code. At the same time, § 726(b) expressly provides that administrative claims incurred in a Chapter 11 case before conversion to Chapter 7 are subordinated to the expenses of administering the case in Chapter 7 after conversion. *CIT Communications Finance Corp. v. Midway Airlines Corp.*, 406 F.3d 229, 241 (4th Cir. 2005). The Chapter 7 administrative expenses are expected to exhaust all of the cash that the estate currently possesses. A Chapter 11 administrative creditor who has been paid interim compensation under § 331--the procedure that U&H was required to follow to obtain authorization in this case--is required to disgorge the payments if there are insufficient estate assets to pay all of the other Chapter 11 administrative creditors in full. *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664-65 (6th Cir. 2004) ("[I]nterim compensation must be disgorged when necessary to achieve *pro rata* distribution of a Chapter 7 bankruptcy estate."). Thus, in a litigated resolution of its claim for disgorgement, the RTC estate would very likely be awarded the entire $376,235.54 that U&H has already received for its services during Chapter 11 administration.

(*Id.* at 11-12).

The Bankruptcy Court subsequently granted summary judgment in favor of the Chapter 7 Trustee and against Ungaretti in the U&H Adversary Proceeding, and this Court affirmed the Bankruptcy Court's decision to sustain the objection of the secured party to the Chapter 7 Trustee's proposed settlement with Ungaretti. (Adv. Bankr. D.I. No. 68, 82-83). In doing so, this Court affirmed the Bankruptcy Court's finding that a settlement of Ungaretti's claim for $253,190.22 was outside the range of reasonable litigation possibilities. (Case No. 1:07-cv-01292, D.I. No. 28, at 10-21). The Bankruptcy Court then entered the Disgorgement Order on the pending Disgorgement Motion. This appeal followed.

U&H's Statement of Facts contains a recitation of the work that U&H says it performed during its two years representing the Chapter 11 Trustee, favorably characterizing the work and its benefits to the Estate. (U&H Br. at 5-7). This recitation is again unsupported by citations to the record. Regardless, the Chapter 7 Trustee takes no position in this appeal with regard to the subject matter of the work performed by U&H, the value of that work, or the benefit that such work purportedly conferred on the Estate. Those are issues the Bankruptcy Court will address when it rules on U&H's Final Application, and, for the reasons described below, are immaterial to this appeal.

<b><u>SUMMARY OF ARGUMENT</u></b>

The Bankruptcy Court correctly entered the Disgorgement Order directing U&H to disgorge the $376,235.54 that it appropriated from the Estate. This Court should affirm the Disgorgement Order.

<u>First</u>, U&H took the funds at issue from the Estate without authorization. It failed to follow the procedures required by the Fee Procedures Order to receive interim compensation under Section 331 of the Bankruptcy Code, 11 U.S.C. § 331. Accordingly, U&H never had any right to the funds under any provision of the Bankruptcy Code; it has simply been holding assets belonging to the Estate, and the Bankruptcy Court rightly ordered that those assets be returned.

<u>Second</u>, even if U&H had properly followed the Fee Procedures Order and could characterize its payments as interim compensation under Section 331, which it cannot, the Bankruptcy Court properly exercised its discretion in ordering the disgorgement of the funds. Both as a matter of law and under the plain terms of the Interim Procedures Order, any interim compensation payments made prior to final approval and allowance by the Bankruptcy Court are nothing more than provisional payments subject to disgorgement. Moreover, it is settled that a Bankruptcy Court may (and perhaps must) order disgorgement of interim professional payments,

where doing so is necessary to ensure a *pro rata* distribution of the assets of the bankruptcy estate to administrative claimants in accordance with the priorities set forth in Section 726(b) of the Bankruptcy Code. U&H does not contest the Bankruptcy Court's factual findings that the Estate lacks sufficient assets to pay all of its Chapter 11 administrative expenses and that the Chapter 7 administrative expenses are expected to exhaust all of the cash that the Estate currently possesses. Thus, disgorgement is necessary to a *pro rata* distribution under Section 726(b).

Third, U&H has failed to present any factual circumstances or legal authorities that would support reversal of the Disgorgement Order. At best, U&H has presented some instances in which other bankruptcy courts under different circumstances have opted to exercise their discretion not to require full disgorgement of all interim compensation. The fact that another court might have decided the issue differently under distinct circumstances, however, certainly does not establish an abuse of discretion by the Bankruptcy Court in entering the Disgorgement Order under the circumstances in the present case. It certainly has not and cannot be shown that no reasonable person could agree with the Bankruptcy Court. Consequently, the Disgorgement Order should be affirmed.

## **ARGUMENT**

### I.    The Payments to U&H Were Unauthorized and Must Be Disgorged to the Estate

The funds that U&H is holding, and has been ordered to disgorge, do not belong to U&H; they belong to the Estate. U&H appropriated the funds without authorization from the Bankruptcy Court, and outside of its legal authority under the Fee Procedures Order and Section 331 of the Bankruptcy Code. Though U&H would characterize the payments as the "only compensation and reimbursement of costs" that it received, in reality it has taken money from the Estate without proper notice or approval by the Bankruptcy Court, and now claims that the

Bankruptcy Court is powerless to take the money back. Such a result is patently inconsistent with the provisions of the Bankruptcy Code and the plain language of the Fee Procedures Order.

### A.    U&H Failed to Comply with the Fee Procedures Order.

The terms of the Fee Procedures Order, which U&H prepared, are clear and unambiguous, and it is undisputed that U&H did not comply with those terms. Within twenty (20) days of the conclusion of each month, U&H was required to present a detailed invoice to counsel for the Trustee, counsel for the Debtor, the United States Trustee, counsel for the Official Committee of Unsecured Creditors, and counsel for National Electric Company. Absent a timely objection, the Estate could pay eighty percent (80%) of the unobjected-to amount of fees incurred for the month and one hundred percent (100%) of the unobjected-to expenses for the month. These payments were expressly "subject to the court's subsequent approval as part of the normal interim fee application process approximately every 120 days." (Bankr. D.I. No. 1830).

U&H has offered no evidence, either here or before the Bankruptcy Court, that it circulated detailed invoices each month, that it did so within twenty (20) days of the conclusion of each month, or that it circulated such invoices to at least the five constituents identified in the Fee Procedures Order. The closest U&H comes to showing compliance with the Fee Procedures Order is its unsubstantiated assertion that it "circulated certain monthly invoices" to "the designated creditors and parties in interest." (U&H Br. at 4). Aside from the total absence of any support for this statement, even if it were accepted as true it would not show compliance with the Fee Procedures Order.

U&H has never clarified what "certain monthly invoices" means, has never identified whether the "designated creditors and parties in interest" includes all five parties identified in the Fee Procedures Order, has never stated whether each monthly invoice was circulated to all five parties each month, and has never claimed or attempted to show that the invoices were circulated

within twenty (20) days of the conclusion of each month. Additionally, even assuming that U&H did properly circulate its invoices, the payments it received have no apparent relationship to the monthly invoices at issue. U&H received payments in round denominations of $15,000, $25,000, or $30,000 a month (sometimes twice a month), amounts having no connection at all to the monthly invoices that U&H eventually and belatedly submitted in connection with the Interim Application and the Final Application. (*Compare* Bankr. D.I. No. 4023, at 2, *with* Bankr. D.I. Nos. 2540, 3002).

Moreover, and most importantly, it is incontrovertible that U&H did ***not*** submit its putative interim compensation payments to the Bankruptcy Court's "subsequent approval as part of the normal interim fee application process approximately every 120 days." In fact, ***none*** of the interim compensation payments were ever approved by the Bankruptcy Court. In light of these deficiencies, U&H's concession that it did not "strictly comply" with the Fee Procedures Order is a gross understatement. (*See* Ung. Br. at 15, 21). At best, U&H may have complied sporadically with just one condition of the Fee Procedures Order, though it has presented no evidence to demonstrate even that deficient level of compliance.

### B.    U&H's Violation of the Fee Procedures Order and Section 331 of the Bankruptcy Code Merits Disgorgement.

U&H treats these violations of the Fee Procedures Order as inconsequential and technical, arguing that they are insufficiently compelling to merit the "harsh remedy" and "disproportionate sanction" of disgorgement. (*See* Ung. Br. at 15-16, 21). Despite U&H's best efforts to characterize the Fee Procedures Order as a trivial consideration, the reality is that U&H was taking assets out of the Estate without any legal authority to do so, in direct violation of the interim compensation provision of the Bankruptcy Code. Section 331 of the Code prescribes the statutory conditions that must be met for a professional to receive interim compensation:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. *After notice and a hearing*, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331 (emphasis added).

In construing Section 331, the Court "is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself." *In re Genlime Group, L.P.*, 167 B.R. 453, 455 (Bankr. N.D. Ohio 1994) (*quoting Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990)). The Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (*quoting Hill v. Fidelity Fin. Services (In re Hill)*, 152 B.R. 204, 205 (Bankr. S.D. Ohio 1993); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146, 1149 (1992)).

In light of the plain language of Section 331, compliance with the notice and hearing requirements of the Fee Procedures Order is an indivisible and unwaivable component of the underlying statutory scheme governing interim compensation of professionals. Section 331 "only allows interim disbursements to professionals '[a]fter notice and a hearing.'" *In re Genlime Group*, 167 B.R. at 455. Consequently, interim compensation payments "without prior notice to creditors and court approval are *impermissible* under the Bankruptcy Code." *Id.* (emphasis added). *See also In re Barber*, 223 B.R. 830, 834 (Bankr. N.D. Ga. 1998) (holding that no interim award of professional fees to the trustee was appropriate where trustee had failed to provide notice of hearing on the trustee's application to creditors). The "clear rationale" for a hearing requirement "is to ensure the bankruptcy estate is administered as efficiently and economically as possible." *In re Wilson Foods Corp.*, 36 B.R. 317, 320 (Bankr. Okla. 1984). A hearing "is necessary in order for the Court to make the independent requisite determination of

reasonableness and affords the applicant an opportunity to meet its minimum burden of explaining how the fee request was determined." *Id.* Thus, "notice and a hearing are required for those who seek compensation from the estate, *even as to those applications where no objection has been filed.*" *Id.* (emphasis added, citations omitted).

Because the payments obtained by U&H from the Estate were not made in compliance with Section 331 of the Bankruptcy Code, as well as the Fee Procedures Order implementing Section 331, the Disgorgement Sum is still property of the Estate and U&H has no right to retain it. As the Bankruptcy Court noted in denying the proposed settlement of the U&H Adversary Proceeding, postpetition transfers of estate property without approval of the Bankruptcy Court are subject to avoidance under Section 549(a)(2)(B) of the Bankruptcy Code. 11 U.S.C. § 549(a)(2)(B) ("[T]he trustee may avoid a transfer of property of the estate--(1) that occurs after the commencement of the case; and … (2)(B) that is not authorized under this title or by the court."). Moreover, it has long been recognized that attorney fees paid without court approval and in the absence of compliance with Sections 327, 330, and 331 of the Bankruptcy Code "are subject to disgorgement absent retroactive appointment and approval." *In re Powers*, 93 B.R. 513, 516 (Bankr. S.D. Tex. 1988) (*citing In re Amherst Mister Anthony, Ltd.*, 63 B.R. 292 (Bankr. W.D.N.Y. 1986)).

In sum, the Bankruptcy Court had the clear authority to order U&H to disgorge the funds it collected from the Estate, where the payment of those amounts had never been approved by the Bankruptcy Court and had been carried out without following the procedures drafted by U&H itself into the Fee Procedures Order. To hold otherwise would empower a professional to take funds out of a bankrupt estate without legal authority or judicial approval, and, without a court ever having reviewed or allowed the disbursement, to hold those funds against the claims of

other administrative claimants on the rationale that taking back what always belonged to the estate would be a "harsh remedy" and a "disproportionate sanction." (*See* U&H Br. at 15-16, 21). It is reasonable for the Bankruptcy Court to retrieve for the benefit of the Estate that which was taken from the Estate without proper authorization, and thus the Bankruptcy Court did not abuse its discretion in ordering U&H to disgorge $376,235.54 back to the Estate.

## II.    The Bankruptcy Court Properly Exercised Its Discretion to Order Disgorgement in Order to Ensure a *Pro Rata* Distribution of the Estate's Assets to Administrative Claimants

Even if U&H had complied with the Fee Procedures Order and had received the Disgorgement Sum as authorized interim compensation, which it did not, Judge Wedoff acted well within his discretion under Sections 105 and 726(b) of the Bankruptcy Code in ordering the disgorgement of those funds to ensure a *pro rata* distribution to the Estate's administrative claimants. No party has questioned or could question the accuracy of the Bankruptcy Court's finding in the U&H Adversary Proceeding that the Estate is unable to pay all of its Chapter 11 administrative expenses--with the Chapter 11 administrative claims totaling approximately $87 million--and that the Chapter 7 administrative expenses are expected to exhaust all of the cash that the Estate currently possesses. (Adv. Bankr. D.I. No. 51, at 11-12).

Under Section 726(b) of the Bankruptcy Code, Chapter 7 administrative claims are entitled to priority over Chapter 11 administrative claims, and all Chapter 11 administrative claimants are entitled to a *pro rata* share of the Estate's remaining assets after payment of the allowed Chapter 7 administrative claims. *See* 11 U.S.C. § 726(b); *CIT Communications Finance Corp. v. Midway Airlines Corp.*, 406 F.3d 229, 241 (4th Cir. 2005). In light of this statutory priority, U&H's narrow focus on the value that it has purportedly brought into the Estate, and the inequity that it would purportedly suffer if it were required to give up its alleged interim compensation, is misplaced. Under Section 726(b), the value of U&H's administrative claim is

on equal footing with all other Chapter 11 administrative claims, and subordinate to all Chapter 7 administrative claims. Thus, every dollar that U&H is permitted to keep in contravention of Section 726(b)'s *pro rata* plan of distribution comes out of the pocket of another administrative claimant of equal or great priority, who presumably likewise claims to have brought value into the Estate. The Bankruptcy Court has the clear legal authority to order a disgorgement of interim compensation to give appropriate effect to the priorities of Section 726(b), and appropriately exercised its discretion to do so in this case.

**A.      The Bankruptcy Court Has the Legal Authority
to Order Disgorgement Under Sections
105 and 726(b) of the Bankruptcy Code.**

The power of the Bankruptcy Court to order disgorgement of interim compensation under either Section 726(b) of the Bankruptcy Code, or, alternatively, under Section 105 in furtherance of the Bankruptcy Code's policies of equality of distribution and payment of administrative claims on a *pro rata* basis, is long settled. In *Matz v. Hoseman*, 197 B.R. 635 (N.D. Ill. 1996), Judge Aspen held that it is "without cavil that the bankruptcy court has the power to disgorge interim professional fees," regardless of "whether this authority stems from 11 U.S.C. § 105, which empowers the court to 'issue any order, process or judgment that is necessary or appropriate to carry out [the Bankruptcy Code],' or is simply an inherent power of the court in its effort to effectuate the distribution scheme outlined by § 726(b)." *Id.* at 640 (*citing Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505, 508-09 (Bankr. E.D. Va. 1995); *United States Trustee v. Johnston*, 189 B.R. 676, 677 (N.D. Miss. 1995)). *See also Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664-65 (6th Cir. 2004) (holding that disgorgement of interim compensation arises under Section 726(b) of the Bankruptcy Code, and is mandatory when necessary to achieve *pro rata* distribution of a Chapter 7 estate); *In re The Lighting Center*, 178 B.R. 320 (Bankr. D.R.I. 1995); *In re Lochmiller Indus.,*

*Inc.,* 178 B.R. 241 (Bankr. S.D. Cal. 1995); *In re Kingston Turf Farms, Inc.,* 176 B.R. 308 (Bankr. D.R.I. 1995); *Guinee v. Toombs (In re Kearing),* 170 B.R. 1 (Bankr. D.D.C. 1994).

The rule that the Bankruptcy Court may order disgorgement of interim compensation to effectuate the policies of the Bankruptcy Code squares with the Seventh Circuit's long-held view that interim awards are "tentative." *In re Taxman Clothing Co.,* 49 F.3d 310, 312 (7th Cir. 1995) (*citing In re Evangeline Refining Co.,* 890 F.2d 1312, 1321 (5th Cir. 1989); *In re Stable Mews Associates,* 778 F.2d 121, 123 n. 3 (2nd Cir. 1985)); *Brouwer v. Ancel & Dunlap (In re Firstmark Corp.),* 46 F.3d 653, 657-59 (7th Cir. 1995). Indeed, in this case, the "provisional" nature of any interim compensation awarded under the Fee Procedures Order is explicitly stated in the order, which is by its own terms "subject to the court's subsequent approval," "subject to further order," and "subject to disgorgement until final allowance by the Court." (Bankr. D.I. No. 1830). To the extent that U&H purports to have complied with the Fee Procedures Order at all, any compensation it received was knowingly subject to these clear conditions. U&H's suggestion that the Bankruptcy Court now lacks the authority to order disgorgement, where the Court has not yet had occasion to approve or allow U&H's payments even on an interim basis, and where the Fee Procedures Order prepared by U&H expressly reserves the right of subsequent approval, modification, and disgorgement to the Bankruptcy Court, cannot be squared with prevailing law or the plain language of the Fee Procedures Order.

### B.    U&H Has Failed to Present a Valid Basis to Deprive the Bankruptcy Court of its Authority to Order Disgorgement.

U&H offers a number of dubious rationales to strip the Bankruptcy Court of its settled authority to order disgorgement. Initially, U&H argues that Section 726(b) does not provide the authority to mandate disgorgement, because it simply mandates a *pro rata* distribution of a bankruptcy estate, and contains no provision for adding property back to the estate. (U&H Br. at

9-10). In support of this position, U&H cites *In re Hyman Freightways, Inc.*, No. 06-2607, 2006 WL 3757972, *2 (D. Minn. Dec. 20, 2006). That misstates the holding of the case. *Hyman* did not address itself to the question of whether a bankruptcy court has the **authority** to order disgorgement of an interim compensation payment, but rather to the question of whether that authority is **mandatory** or **discretionary**. *Id*. at *2-3. In affirming the bankruptcy court's decision to exercise its discretion not to order disgorgement, the district court agreed with the bankruptcy court that "the plain language of § 726(b) does not **require** disgorgement." (*Id*. at *2 (emphasis added)). Three sentences later, however, the district court added that, "[d]isgorgement of interim professional compensation is a **matter of discretion**." *Id*. at *3 (emphasis added).

Thus, *Hyman* does not establish the absence of authority to order disgorgement of interim compensation under Section 726(b), as U&H seeks to impute; it merely joins those courts that have held the power of disgorgement to be discretionary rather than mandatory. That is not the question before this Court. Regardless of whether the power is mandatory or discretionary, the authority of a court to order disgorgement under Section 726(b) has been affirmed on repeated occasions. *See, e.g., Specker Motor Sales*, 393 F.3d at 663-664; *Matz*, 197 B.R. at 640; *In re Metropolitan Elec.*, 185 B.R. at 508. Even if the power of disgorgement could not be found in Section 726(b), moreover, the Bankruptcy Court would still have the power under Section 105 of the Bankruptcy Code to effectuate the policies of Section 726(b) by ordering disgorgement. *See Matz*, 197 B.R. at 640; *In re Metropolitan Elec.*, 185 B.R. at 508; *Guinee*, 170 B.R. at 7.

U&H also chides the Bankruptcy Court for purportedly not engaging in the "extensive analysis undertaken by the bankruptcy court in *Hyman*," including a consideration of the equities and a recalculation of distribution. (U&H Br. at 10). The facts of *Hyman*, however, are clearly distinguishable. In *Hyman*, the district court held that the bankruptcy court had not abused its

discretion when it declined to order disgorgement of interim compensation paid to three Chapter 11 professionals in order to provide a *pro rata* distribution of all Chapter 11 administrative claims. The Chapter 7 trustee in *Hyman* sought disgorgement of interim professional expenses that had been paid to the Chapter 11 professionals eight years earlier in order to distribute the interim fees *pro rata* among all Chapter 11 administrative claimants. 2006 WL 3757972, at *1. The bankruptcy court declined to order the requested disgorgement, and the district court found this decision to be within the bankruptcy court's discretion, in light of the fact that the trustee "was not seeing a refund of compensation paid to claimants with a lower priority," and in light of "the eight-year time period between the payment of the interim award and the trustee's request for disgorgement[.]" *Id.* at *3. Here, by contrast, the Chapter 7 Trustee is seeking disgorgement from a Chapter 11 administrative expense claimant, whose priority is lower than the still pending Chapter 7 administrative expense claimants, and did not wait eight years to seek disgorgement. Moreover, in this case the Bankruptcy Court exercised its discretion to order disgorgement rather than to deny disgorgement. The fact that the bankruptcy court in *Hyman* elected to exercise its discretion differently from the Bankruptcy Court in this case under different circumstances assuredly does not establish an abuse of discretion by Judge Wedoff in this case.

Next, U&H asserts that the Bankruptcy Court "completely ignored the relative gain in distribution percentages brought about by the disgorgement," and argues that the court should have weighed "the hardship imposed on the professional against the value to the estate[.]" (U&H Br. at 11). U&H relies on *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bankr. N.D. Ohio 1989). In that case, the court began its analysis of the disgorgement issue by ***affirming*** its legal authority to require the disgorgement of professional fees: "It is fairly well-settled ... that this Court may require professional fees to be disgorged to achieve a pro-rated deduction." *Id* at 258

(*citing In re Kaiser Steel Corp.,* 74 B.R. 885, 891 (Bankr. D. Colo. 1987); *In re Burlington Tennis Ass'n,* 34 B.R. 839, 841 (Bankr. D. Vt. 1983)). The court also recognized that "the Bankruptcy Court has wide discretion in the awarding of fees." *Id.* at 259 (*citing Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 422 (9th Cir. 1983); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 894 (1st Cir. 1985); *Matter of Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987)).

After identifying these guiding principles, the court in *In re Vernon Sand* ultimately elected not to exercise its discretion to order disgorgement, based on various circumstances unique to that case. *Id.* at 259. "[M]ost important[]" among these reasons was the fact that the party objecting to the professional's fees did not request disgorgement of past fees, the merits had not been fully argued, and the professional had not been given an opportunity to address the issue. *Id.* Additionally, the court found that requiring a refund of the fees would be of little benefit to the estate compared to the administrative burden it would create due to difficulties of collecting related fees. *Id.* Moreover, the court determined that the professional may have a Chapter 7 administrative claim which should be paid before Chapter 11 administrative claims are paid, due to services performed in connection with the conversion from Chapter 11 to Chapter 7. *Id.*

Here, in contrast to *Vernon*, the Chapter 7 Trustee has specifically sought disgorgement of U&H's fees, U&H has had a full and fair opportunity to address the issue, there has been no showing of any administrative burden associated with the disgorgement order, and U&H has no Chapter 7 administrative claim. Thus, the factors leading the court not to exercise its discretion to order disgorgement in *Vernon Hills* are not present here.

U&H's other authorities on this point, which U&H cites for the proposition that disgorgement is a "harsh sanction" that should only be applied in "extreme situations," are likewise readily distinguishable, and in fact support disgorgement in the present case. (U&H Br. at 11-12). In *In re CHC Industries, Inc.*, 2006 WL 4968122 (Sept. 5, 2006), the court initially reaffirmed that disgorgement is "within the Court's discretion," then declined to exercise its discretion because the bankruptcy estate was ***not*** administratively insolvent; the debtor had more than sufficient cash on hand to cover all of its administrative claims and unsecured claims. *Id.* at *5-6. Simultaneously, the court noted that, "the administrative insolvency of a bankruptcy estate is a situation that may justify the disgorgement of interim fees previously paid to a professional." *Id.* at *7. Those are precisely the circumstances presented in this case. *See also In re LTV Steel Company, Inc.*, 288 B.R. 775, 779 n. 2 (Bankr. N.D. Ohio 2002) (noting that "a bankruptcy judge has authority to order disgorgement of interim compensation when an estate turns out to be administratively insolvent," and that "[a]ttorney fees may also be disgorged when an attorney inadvertently fails to report fees") (citations omitted).

Likewise, in *In re Anolik*, 207 B.R. 34 (Bankr. D. Mass. 1997), the court observed at the outset that "[i]nterim compensation awards under 11 U.S.C. § 331 are interlocutory and are subject to disgorgement." *Id.* at 37-38. Though identifying disgorgement as a "harsh remedy," the court further concluded that "ordering disgorgement of interim fees in either a Chapter 7 or 11 case is a discretionary matter" to be "applied on a case by case basis." *Id.* at 39. Having ruled that it could order disgorgement, the court declined to do so, for the sole reason that consideration of the disgorgement issue would be "premature" where the trustee had filed a "final account" that was defective in numerous respects, such that the court could not adequately

evaluate the other professional fee claims and administrative expenses at issue. *Id.* at 40-41. No similar circumstances are present or have been alleged in this case.

Finally, in *In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr. N.D. Ill. 1998), the court expressly held that "[d]isgorgement is appropriate where a Chapter 7 estate is administratively insolvent," and that "[i]n this District, there is no doubt of the authority of a bankruptcy judge to order disgorgement." 219 B.R. at 1022 (*citing Matz*, 197 B.R. at 639). Recognizing that the Bankruptcy Code "does not have any specific disgorgement provision," the court traced the power to disgorge to Section 105, and did not discuss Section 726(b). *Id.* (*citing In re Kearing*, 170 B.R. 1, 7 (Bankr. D. Colo. 1994)). The court went on to hold that disgorgement of a $2,500 interim fee paid to special counsel was "manifestly appropriate and required to provide pro rata treatment of other unpaid administrative claimants in this insolvent estate," and directed that the entire fee be returned to the trustee "for distribution among the administrative claimants by further order." *Id.* at 1022. That ruling strongly favors the Bankruptcy Court's decision in the present case.

C.    The *St. Joseph's Cleaners* Decision Does not Circumscribe the Bankruptcy Court's Authority to Order Disgorgement

U&H's brief includes a lengthy discussion of the "well-reasoned statutory analysis of disgorgement" in *In re St. Joseph's Cleaners, Inc.*, 346 B.R. 430 (Bankr. W.D. Mich. 2006), arguing that it "adds further question to the imposition of the remedy in the context of situations such as the one in this case." (U&H Br. at 12-14). That case represents the minority view on the issue of disgorgement, in that it questions whether disgorgement is available under Sections 105 and 726(b), and instead argues that the issue of disgorgement of professional compensation is better framed under Section 330(a)(5) of the Bankruptcy Code, which gives the Chapter 7 trustee "judicial authority to 'reel back' previously paid attorney fees at any time through the conclusion

of the Chapter 7 proceeding," but requires disgorgement "only if the amount awarded to the professional as interim compensation under Section 331 exceeds what the court ultimately awards as a professional fee under Section 330." *Id*. at 438. This was a critical distinction in *St. Joseph's Cleaners*, because in that case, a final fee award had already been allowed, and the court found that "the right to recover fees under Section 330(a)(5) ceases once the final Section 330 award is made." *Id*.

In this case, by contrast, the issue raised by *St. Joseph's Cleaners* is merely academic. The Bankruptcy Court has never made a final award and allowance to U&H, or, for that matter, even an interim award and allowance. Because no final award has been made, even if this Court were to apply the minority rule advocated by the court in *St. Joseph's Cleaners*, the Bankruptcy Court was still well within its discretion to "reel back" the fees previously paid to U&H. 346 B.R. at 438. That is particularly so in light of the Bankruptcy Court's uncontested finding that the Estate's Chapter 7 administrative expenses are expected to exhaust all of the cash that the Estate currently possesses. ((Adv. Bankr. D.I. No. 51, at 11-12). That finding assures that the amount previously received by U&H exceeds what U&H could ultimately be awarded under Section 330, which supports a "reel back" under Section 330(a)(5). 346 B.R. at 438.

There is an additional reason that *St. Joseph's Cleaners* is inapposite. Though expressing "doubts" concerning the application of Section 726(b) to require a professional to disgorge previously paid fees, the court in *St. Joseph's Cleaners* nevertheless acknowledged the binding precedential effect of *Specker Motor Sales*, which holds that Section 726(b) mandates disgorgement where necessary to achieve a *pro rata* distribution to administrative claimants. 393 F.3d at 663-664. The court in *St. Joseph's Cleaners*, however, was able to distinguish *Specker Motor Sales* on the basis that, in *St. Joseph's Cleaners*, a Chapter 11 plan had been confirmed

and the fees at issue were awarded in conjunction with that confirmation. 346 B.R. at 439. As the court explained it, "This is not an instance where the professional has yet to receive final approval of its fees under Section 330. The court gave its final approval of [the professional's] fees over six years ago when [the professional's] representation of the bankruptcy estate ceased." *Id.* at 440. Here, by contrast, no Chapter 11 plan was confirmed and there has been neither interim nor final approval of U&H's fees by the Bankruptcy Court. Consequently, *St. Joseph's Cleaners* does not afford U&H a new avenue to retain its fees.

## III.    The Circumstances of this Case Warranted the Bankruptcy Court's Exercise of Its Discretion to Order a Disgorgement by U&H

U&H ends its brief with a discussion of various cases in which bankruptcy courts exercised their discretion not to order disgorgement (or to order only partial disgorgement) under circumstances dissimilar to the present case, and argues that these authorities establish that the Bankruptcy Court abused its discretion by ordering disgorgement under the circumstances of this case. (U&H Br. at 16-21). U&H attempts to construct a general rule that disgorgement is a "punitive" remedy that should only be applied where there is "egregious conduct, violations of requirements of attorney disinterestedness or failures to disclose," and that "counsel's well intentioned efforts merit compensation" that should not be "reeled back" in the absence of one of these aggravating factors. (U&H Br. at 16). That position is not supported by the law, as disgorgement has frequently been allowed in the absence of any professional misconduct or wrongdoing. In any event, U&H's violation of the Fee Procedures Order is sufficiently egregious to warrant disgorgement even if such aggravating circumstances were required.

At the outset, there is no rule requiring "egregious conduct, violations of requirements of attorney disinterestedness or failures to disclose" to order disgorgement under Sections 105 and 726(b) of the Bankruptcy Code. Administrative insolvency alone is sufficient, and courts have

routinely allowed disgorgement to advance the Bankruptcy Code's policies of equality of distribution and payment of administrative claims on a *pro rata* basis, regardless of whether or not the disgorging professional engaged in any wrongdoing. *See, e.g., In re Kids Creek Partners*, 219 B.R. at 1022; *Matz*, 197 B.R. at 640-41; *In re Metropolitan Elec.*, 185 B.R. at 508-510; *In re Lochmiller*, 178 B.R. at 252-53; *In re Kingston Turf Farms*, 176 B.R. at 310; *Guinee*, 170 B.R. at 7.

The authorities relied upon by U&H do not change the conclusion that disgorgement is within the sound discretion of the Bankruptcy Court to effect a *pro rata* distribution to administrative claimants, irrespective of professional wrongdoing. Most of U&H's authorities do not involve disgorgement under circumstances of administrative insolvency or relating to Section 726(b) of the Bankruptcy Code. They deal with wholly distinct circumstances and provisions of the Bankruptcy Code, and disgorgement in the context of professional misconduct, such as when a professional is not disinterested or represents or holds an interest adverse to the interest of the estate within the meaning of Section 328(c) of the Bankruptcy Code, or when a professional violates the disclosure rules under Section 329 of the Code. *See In re Sauer*, 222 B.R. 604, 608-10 (8th Cir. BAP 1998) (evaluating disgorgement award under Section 328(c), and reducing it in part based on five extenuating circumstances, including immediate disclosure of the disputed transaction to the bankruptcy court and court's expression of an initial willingness to approve the transaction); *In re Triple S Restaurants, Inc.*, 130 Fed. Appx. 766, 772 (6th Cir. 2005) (holding that bankruptcy court did not abuse its discretion in ordering partial disgorgement of the portion of fees paid to an attorney for services in contemplation of bankruptcy, where attorney failed to report the compensation under Section 329); *In re Davis*, 2007 WL 1219718 (Bankr. N.D. Ala. Apr. 25, 2007) (ordering partial disgorgement for failure to disclose financial transactions

between debtor and attorneys in violation of Section 329 and Rule 2016(b)); *In re Metropolitan Environmental, Inc.*, 293 B.R. 871, 886-90 (Banrk. N.D. Ohio 2003) (ordering partial disgorgement for failure to disclose a guaranty agreement related to fees in violation of Section 329 and Rules 2014(a) and 2016(b), but finding that the "unique circumstances" of the case permitted the court "to impose a sanction of less than a total disgorgement of fees").

Several of U&H's authorities take a further step away from the present case. Not only do they arise in the context of professional misconduct under Section 329 rather than in the context of advancing the policies of equitable and *pro rata* distributions under Section 726(b), but in addition they deal with disallowance of fees, not disgorgement. *See In re Midway Industrial Contractors, Inc.*, 272 B.R. 651, 663-65 (Bankr. N.D. Ill. 2001) (disallowing a portion of fees requested by attorney for failing to be disinterested and failing to make full disclosure to the Bankruptcy Court); *In re Diamond Mortgage Corp. of Illinois*, 135 B.R. 78, 96 (Bankr. N.D. Ill. 1990) (disallowing 60% of fees requested by attorney as a sanction for holding adverse interests, representing adverse interests, failing to be disinterested, and failing to make full disclosure to the Bankruptcy Court).

U&H's attempt to use these cases to create a general rule requiring egregious conduct, violations of requirements of attorney disinterestedness or failures to disclose cannot succeed. Egregious conduct, lack of disinterestedness, or a conflict of interest are textual requirements of Sections 328(c) and 329. No similar conditions are set forth in Section 726(b), and it requires a leap of the imagination to import a textual restriction from one provision of the Bankruptcy Code to a wholly unrelated provision of the Code containing no such restriction. Even in the narrow context of professional misconduct, moreover, U&H's authorities are very fact-specific, and at best only establish that a court may exercise its discretion not to impose total disgorgement as a

sanction; they do not hold that imposing full disgorgement is invariably an abuse of discretion. The fact that bankruptcy courts under other circumstances have elected not to impose full disgorgement as a sanction under Section 329 does not mean that Judge Wedoff abused his discretion by opting to impose full disgorgement under Sections 105 and 726(b) in this case.

Indeed, even if "egregious conduct" were a condition of disgorgement, which it is not, there was ample factual basis for Judge Wedoff to find egregious conduct in this case. U&H took funds from the Estate without following the procedures set forth in the Fee Procedures Order, and without the approval of the Bankruptcy Court. Having prepared the Fee Procedures Order itself, U&H clearly was familiar with its requirements, and as experienced bankruptcy counsel, it was plainly familiar with its obligations under Section 331. By depleting the assets of the Estate without complying with the orders of the Bankruptcy Court and statutory law, U&H advantaged itself to the detriment of other administrative claimants. Under these circumstances, it cannot be said that no reasonable person could agree with the Bankruptcy Court's decision to enter the Disgorgement Order.

U&H further argues that requiring it to disgorge $376,254.54, where over $215,000.00 of that amount is purportedly "comprised of costs advanced on behalf of the Bankruptcy Trustee,"[4] results in "an even more egregiously inequitable and disproportionate result." (U&H Br. at 18). U&H cites *In re Kisseberth*, 273 F.3d 714 (6th Cir. 2001), for the proposition that to order the disgorgement of costs "would be the equivalent of sanctioning a windfall for the … Estate." (U&H Br. at 18-19). In *Kisseberth*, however, the Sixth Circuit affirmed the order of the bankruptcy court directing that ***all*** fees and costs be disgorged. Contrary to U&H's reading of the case, the court did not find that disgorgement of a transcript fee operates as a windfall to the

---

[4] U&H provides no record support for its assertion that $215,181.31 of the disgorged amounts are allocated to out of pocket costs.

bankruptcy estate. In *Kisseberth*, the debtors paid transcript costs pursuant to bankruptcy court order, with the understanding that they would receive reimbursement of those costs if an appeal of an insurance case were successful. *Id.* at 717. After the settlement of the insurance case, the debtors' attorney applied the proceeds of the successful appeal to his fees, not the costs. *Id.* The Sixth Circuit affirmed the district court's order requiring disgorgement by the attorney of the amount of the transcript cost, because it was not properly part of the estate, but rather was part of a "postpetition loan" to the estate. *Id.* at 721-22. Thus, *Kisseberth* does not support U&H's view that requiring disgorgement of costs paid by U&H operates as a windfall to the Estate.

In any event, neither Section 726(b) nor any other provision of the Bankruptcy Code attributes superpriority status to the costs paid by U&H as compared to its fees. Like the remainder of U&H's Chapter 11 administrative claim, the costs paid by U&H are subordinate to the administrative costs of Chapter 7 claimants, and are on equal footing to the administrative costs of other Chapter 11 claimants. Thus, disgorgement of U&H's costs is not a "windfall" to the Estate; it simply promotes equality of distribution and a proper priority of distribution among Chapter 7 and Chapter 11 administrative claimants, and prevents a "windfall" to U&H at the expense of other administrative claimants.

## CONCLUSION

For the reasons set forth herein, the Estate respectfully requests that this Court enter an Order: (1) affirming the Disgorgement Order; (2) awarding the Chapter 7 Trustee his costs, including reasonable attorneys' fees, of opposing the appeal; and (3) granting such other and further relief as the Court deems necessary and appropriate.

Dated: August 26, 2008

**THE CHAPTER 7 ESTATE OF RESOURCE TECHNOLOGY CORPORATION, BY AND THROUGH JAY A. STEINBERG, NOT INDIVIDUALLY BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE**

By:    /s James G. Richmond

Barry A. Chatz
George P. Apostolides
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
Phone: (312) 876-7100
Fax: (312) 876-0288

James G. Richmond
Gregory E. Ostfeld
Greenberg Traurig LLP
77 W. Wacker Dr., Suite 2500
Chicago, IL 60601
Phone: (312) 456-8400
Fax: (312) 456-8435

*Attorneys for Appellee*

## APPELLEE'S STATUTORY ADDENDUM PURSUANT TO
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 8010(B)

### 11 U.S.C. § 105

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

(d) The court, on its own motion or on the request of a party in interest—

(1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—

(A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or

(B) in a case under chapter 11 of this title—

(i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

(ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

(iii) sets the date by which a party in interest other than a debtor may file a plan;

(iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

(v) fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

### 11 U.S.C. § 328

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation

different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

**(b)** If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327 (d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

**(c)** Except as provided in section 327 (c), 327 (e), or 1107 (b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

## 11 U.S.C. § 329

**(a)** Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

**(b)** If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

**(1)** the estate, if the property transferred—

**(A)** would have been property of the estate; or

**(B)** was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

**(2)** the entity that made such payment.

## 11 U.S.C. § 330

**(a)**

**(1)** After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

**(A)** reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

**(B)** reimbursement for actual, necessary expenses.

**(2)** The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

**(3)** In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

**(A)** the time spent on such services;

**(B)** the rates charged for such services;

**(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

**(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

**(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

**(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

**(4)**

**(A)** Except as provided in subparagraph (B), the court shall not allow compensation for—

**(i)** unnecessary duplication of services; or

**(ii)** services that were not—

**(I)** reasonably likely to benefit the debtor's estate; or

**(II)** necessary to the administration of the case.

**(B)** In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

**(5)** The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

**(6)** Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

**(7)** In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

**(b)**

**(1)** There shall be paid from the filing fee in a case under chapter 7 of this title $45 to the trustee serving in such case, after such trustee's services are rendered.

**(2)** The Judicial Conference of the United States—

**(A)** shall prescribe additional fees of the same kind as prescribed under section 1914 (b) of title 28; and

**(B)** may prescribe notice of appearance fees and fees charged against distributions in cases under this title;

to pay $15 to trustees serving in cases after such trustees' services are rendered. Beginning 1 year after the date of the enactment of the Bankruptcy Reform Act of 1994, such $15 shall be paid in addition to the amount paid under paragraph (1).

**(c)** Unless the court orders otherwise, in a case under chapter 12 or 13 of this title the compensation paid to the trustee serving in the case shall not be less than $5 per month from any distribution under the plan during the administration of the plan.

**(d)** In a case in which the United States trustee serves as trustee, the compensation of the trustee

under this section shall be paid to the clerk of the bankruptcy court and deposited by the clerk into the United States Trustee System Fund established by section 589a of title 28.

## 11 U.S.C. § 331

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

## 11 U.S.C. § 549

**(a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
**(1)** that occurs after the commencement of the case; and
**(2)**
**(A)** that is authorized only under section 303 (f) or 542 (c) of this title; or
**(B)** that is not authorized under this title or by the court.
**(b)** In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.
**(c)** The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.
**(d)** An action or proceeding under this section may not be commenced after the earlier of—
**(1)** two years after the date of the transfer sought to be avoided; or
**(2)** the time the case is closed or dismissed.

## 11 U.S.C. § 726

**(a)** Except as provided in section 510 of this title, property of the estate shall be distributed—
**(1)** first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of—

**(A)** the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or

**(B)** the date on which the trustee commences final distribution under this section;

**(2)** second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

**(A)** timely filed under section 501 (a) of this title;

**(B)** timely filed under section 501 (b) or 501 (c) of this title; or

**(C)** tardily filed under section 501 (a) of this title, if—

**(i)** the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501 (a) of this title; and

**(ii)** proof of such claim is filed in time to permit payment of such claim;

**(3)** third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501 (a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

**(4)** fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

**(5)** fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

**(6)** sixth, to the debtor.

**(b)** Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507 (a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503 (b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503 (b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

**(c)** Notwithstanding subsections (a) and (b) of this section, if there is property of the kind specified in section 541 (a)(2) of this title, or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:

**(1)** Claims allowed under section 503 of this title shall be paid either from property of the kind specified in section 541 (a)(2) of this title, or from other property of the estate, as the interest of justice requires.

**(2)** Allowed claims, other than claims allowed under section 503 of this title, shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section, in the following order and manner:

**(A)** First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541 (a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

**(B)** Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541 (a)(2) of this title that is solely liable for debts of the debtor.

**(C)** Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541 (a)(2) of this title.

**(D)** Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.